Lawrence Hall BENNETT,
Plaintiff-Appellant,

v.

Gaylord L. CAMPBELL, Individually and as United States Marshal for the Central District of California, Vernon D. Acree, a Commissioner of Customs of the United States, and George C. Corcoran, as Assistant Commissioner of Customs (Investigations), Defendants-Appellees.

No. 76–3074.

United States Court of Appeals,
Ninth Circuit.

Nov. 10, 1977.

John M. Sink, Santa Barbara, Cal., for plaintiff-appellant.

Carolyn M. Reynolds, Asst. U. S. Atty., Los Angeles, Cal., for defendants-appellees.

Before TRASK, WALLACE and ANDERSON, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

Plaintiff-Appellant Lawrence Hall Bennett (Bennett) filed this action in the district court seeking damages from defendants Gaylord L. Campbell, Vernon D. Acree, and George C. Corcoran, who are federal law enforcement officials, on the grounds that they had violated his rights under the Fourth and Fifth Amendments to the United States Constitution by allowing him to remain ten days in the Santa Barbara County Jail on a federal warrant before

taking him before a magistrate. The district court granted defendants' motion for summary judgment and denied Bennett's motion to amend his complaint to include four other lesser federal officials as party defendants. Bennett appeals. We affirm the summary judgment, but reverse and remand the denial of the motion for leave to amend the complaint.

## BACKGROUND

The events leading to this action began on April 21, 1973, when Bennett, a resident of Santa Barbara County, California, was arrested by deputy sheriffs of that county and incarcerated in the Santa Barbara County Jail. The arrest was made pursuant to a federal warrant issued by the United States District Court for the District of Arizona at the request of the United States Customs Agency in Nogales, Arizona.

On May 1, 1973, after spending 10 days in the Santa Barbara County Jail, Bennett was picked up by federal marshals and arraigned before a federal magistrate. He was immediately released from custody. Subsequently, the indictment against him was dismissed.

Bennett brought an action in Santa Barbara County Superior Court against Santa Barbara County (and apparently the original arresting county officers). This action was settled and does not concern us here.

On December 12, 1975, Bennett commenced this suit against the above-named federal officials. In his complaint he alleged that upon his information and belief each of the defendants had been notified that he was in detention. Bennett also alleged that defendants:

"knowingly, negligently, willfully, intentionally and maliciously allowed plaintiff to remain incarcerated in the Santa Barbara County Jail for approximately 10 days. . . ."

"As a result of such course of conduct by said defendants, plaintiff was falsely imprisoned for 10 days and was denied access to the United States courts for that period of time, in violation of rights secured by the Fourth and Fifth Amend-

ments to the Constitution of the United States and contrary to the policy of the United States courts [(Federal Rules of Criminal Procedure, Rule 5(a))]"  (C.R. 3)

Bennett later moved to amend his complaint to include four lesser federal officials.

On April 9, 1976, a motion for summary judgment was filed by the defendants, along with each of their affidavits. The affidavit of Marshal Campbell showed that he has been in his position since 1969; that he did not receive any telephone call concerning Bennett on or about April 21, 1973, nor did he know anything about him until after he was brought to Los Angeles by his deputy marshals on May 1, 1973.

The affidavit of Commissioner of Customs Acree stated that he had been in that position since May 2, 1974; that he is responsible for the overall administration of the United States Customs Service; that he had no knowledge of any facts concerning the warrant verification, arrest, or detention of Bennett during the period from April 21, 1973, to May 1, 1973, until after litigation was commenced against the County of Santa Barbara in early 1975.

The affidavit of appellee Corcoran stated that since February 17, 1974, he has been the Assistant Commissioner of Customs (Investigations), but that during the ten (10) day period in question in 1973, he was the Customs Attache in Paris, France; that he had no knowledge of Bennett until after he instituted the suit against the County of Santa Barbara in 1975.

Bennett offered no real opposition to these affidavits of the defendants. The only affidavit which Bennett did file was that of his attorney wherein he attached unsigned copies of affidavits of two Santa Barbara sheriff's officers. These had been taken in connection with the earlier state court suit against Santa Barbara County. At the hearing on the summary judgment motion the district court struck these affidavits of the officers because they were not properly executed or filed in the state court.

After taking these matters under advisement, the district court granted defendant's motion for summary judgment and denied Bennett's motion for leave to amend his complaint. From these rulings Bennett appeals.

## I.

### THE SUMMARY JUDGMENT

■ Under Rule 56(e), Federal Rules of Civil Procedure:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

The affidavits of the three defendants clearly show that they had no knowledge of any of the events in Santa Barbara County which involved Bennett. Bennett has pointed to no specific facts to refute those affidavits. Under *Midwest Growers Co-op Corp. v. Kirkemo,* 553 F.2d 455, 464 (9th Cir. 1976), the lack of personal knowledge by the defendants about any of the facts and events leading to a claim such as Bennett's, immunizes those defendants from any claim for damages.

Therefore, based on the record in this case, it is clear that Bennett had shown no genuine issue of fact for trial as concerns the three above-named defendants. The district court properly granted their motion for summary judgment.

■ During the proceedings below, Bennett relied upon the language in Federal Rule of Criminal Procedure 5(a) (which states that an arrested person shall be taken before a federal magistrate or other official "without unnecessary delay"), as establishing his cause of action against the three defendants. This reliance misses the mark. Rule 5(a) states that "[a]n officer *making an arrest* under a warrant issued upon a complaint or any person *making an arrest* without a warrant shall take the arrested person without unnecessary delay before the nearest available federal magistrate . . ." (emphasis added). Even if we were to find that this rule establishes a cause of action for damages against a federal official (which we do not), the plain language of the rule refers to the *arresting* officers, who in this case were the state officers from Santa Barbara County. Therefore, any duty which Bennett alleged is owed to him under Rule 5(a) is owed by the state officials, not the three defendants in this case.[1]

## II.

### MOTION FOR LEAVE TO AMEND THE COMPLAINT

■ On April 21, 1976, after certain discovery, Bennett moved to amend his complaint to include four lesser federal officers[2] who allegedly did have knowledge that Bennett was incarcerated in the Santa Barbara Jail under the federal warrant. The trial court denied the motion to amend on grounds of mootness. (C.R. 119) We find that the denial of the motion to amend was error and reverse. While true that the original three defendants are immune from liability due to their total lack of any knowledge regarding Bennett's incarceration, no such situation exists as to the four lesser officials, at least as the record stands at this point. The record contains only the bare allegations of the complaint "which we

---

1. Under the authority of Rule 5(a) and 18 U.S.C. 3041, 3043, these arresting officers can "without undue delay" take the person arrested before a federal magistrate *or* various state officials, should the federal magistrate be unavailable.

2. These officers are Michael B. Winters and Bobby R. Sheppard of the U. S. Customs Service, and J. Pat Madrid and Richard E. Chesley of the U. S. Marshal's Office. It should be noted also that George C. Corcoran was dropped from the amended complaint since he did not hold his position at the time of Bennett's incarceration.

**332**

must accept as true for the purposes of this appeal." *Mark v. Groff,* 521 F.2d 1376, 1378 (9th Cir. 1975). Therefore, the cause of action against the four lesser officers stated in the amended complaint cannot be considered moot.

Bennett alleged in his amended complaint that these federal officers, among other things, "knowingly" and "maliciously" allowed him to remain incarcerated in the Santa Barbara County Jail, depriving him of his right to liberty and due process of law. It is well-settled that when a federal officer acting under color of his authority deprives a person of his constitutional rights, he becomes liable under an action for damages. *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), *Mark v. Groff, supra, Apton v. Wilson,* 165 U.S.App.D.C. 22, 506 F.2d 83 (1974).

As was stated in *Apton v. Wilson* :
"Freedom from arbitrary arrest and detention are among our most cherished liberties. Their infringement has warranted a remedy in damages inferred from the Constitution itself in cases where Congress has failed to provide it by statute." (165 U.S.App.D.C. at 32, 506 F.2d at 93)

The federal officers in this case do have a qualified immunity which might insulate them from liability for damages. Under this qualified immunity doctrine, a government officer performing acts in the course of official conduct is insulated from damage suits only if "(1) at the time and in light of all the circumstances there existed reasonable grounds for the belief that the action was appropriate *and* (2) the officer acted in good faith." *Mark v. Groff, supra,* 521 F.2d at 1379–1380. *See also Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

Because the trial court in this case denied Bennett's motion for leave to amend his complaint to include the four lesser officers, neither the immunity of these officers nor the merits of Bennett's claim against them has been considered by the trial court. We reverse and remand for further proceedings to consider these matters.

We note, however, that before Bennett reaches the merits of the claims contained in his amended complaint, one obstacle may remain in his path to amendment. This obstacle is that of timeliness of the motion for leave to amend, i. e., whether or not the amendment "relates back" under Federal Rule of Civil Procedure 15(c) to the original complaint or whether the amended complaint would be barred by an applicable statute of limitations. This issue was first raised on appeal. We decline to decide it and remand so that the trial court may first consider and rule on it.

AFFIRMED in part, REVERSED and REMANDED in part.